ORIGINAL

**RECEIVED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

APR 0 6 2012

APR 06 2012
THOMAS G. BRUTON
**CLERK, U.S DISTRICT COURT**

Archie Brown

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

Thomas T. Dart          vs.
Clifford Oliver
Officer Bamba #4401
Sgt. Harris #890
Lt. Hurd #043
Joanne Tunney, MHSS
Cermak Health Services
Ms. Stein, MHS
Danielle Thomas, MHS

Case No: 10 C 3610
(To be supplied by the Clerk of this Court)

**F I L E D**

**MAY 1 1 2012**

THOMAS G. BRUTON
**CLERK, U. S. DISTRICT COURT**

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

✓          **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)

_____          **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

_____          **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

**I.** **Plaintiff(s):**

    A.   Name: **Archie Brown**

    B.   List all aliases:

    C.   Prisoner identification number: **N-21714**

    D.   Place of present confinement: **Western I L. Correction Center**

    E.   Address: **2500 Rte. 99 South**

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.** **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.   Defendant: **Thomas J. Dart**

           Title: **Sheriff of Cook County**

           Place of Employment: **Cook County Jail**

    B.   Defendant: **Clifford Oliver**

           Title: **Unknown**

           Place of Employment: **Cermak Health Services**

    C.   Defendant: **Corr. Officer Rambo**

           Title: **Correctional Officer of Cook County Jail**

           Place of Employment: **Cook County Jail**

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

**I.** **Plaintiff(s):**

    A.    Name: _Archie Brown_

    B.    List all aliases: _None_

    C.    Prisoner identification number: _N-21714_

    D.    Place of present confinement: _W.I.C.C._

    E.    Address: _2500 Rte. 99 South_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.** **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.    Defendant: _Sgt. Harris, 890_

            Title: _Sergeant of Corrections_

            Place of Employment: _Cook County Jail_

    B.    Defendant: _Lt. Hurd, 043_

            Title: _Lieutenant_

            Place of Employment: _Cook County Jail_

    C.    Defendant: _Joanne Tunney, MHSS_

            Title: _Mental Health Service Agent_

            Place of Employment: _Cermak Health Services_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

I. **Plaintiff(s):**

   A.  Name: _Archie Brown_

   B.  List all aliases: _____

   C.  Prisoner identification number: _N-21714_

   D.  Place of present confinement: _W.I.C.C._

   E.  Address: _2500 Rte. 99 South_

   (If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D.
   number, place of confinement, and current address according to the above format on a
   separate sheet of paper.)

II. **Defendant(s):**
   (In **A** below, place the full name of the first defendant in the first blank, his or her official
   position in the second blank, and his or her place of employment in the third blank. Space
   for two additional defendants is provided in **B** and **C**.)

   A.  Defendant: _Cermak Health Services_

       Title: _Hospital_

       Place of Employment: _Cook County Jail_

   B.  Defendant: _Ms. Stein_

       Title: _Mental Health Services_

       Place of Employment: _Cermak Health Services_

   C.  Defendant: _Danielle Thomas_

       Title: _Mental Health Services_

       Place of Employment: _Cermak Health Services._

   (If you have more than three defendants, then all additional defendants must be listed
   according to the above format on a separate sheet of paper.)

2

Revised 9/2007

**III.** **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: _Archie Brown v. Mr. Sajjad, #Case No. 12 C 0049_

B. Approximate date of filing lawsuit: _Jan. 4, 2012_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _Just me Archie Brown._

D. List all defendants: _Doctor Sajjad and Roseland Community Hospital_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _Federal Court Northern District_

F. Name of judge to whom case was assigned: _Robert M. Dow, Jr._

G. Basic claim made: _Medical Negligence and Deliberate indifference_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Pending_

I. Approximate date of disposition: _N/A_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Archie Brown V. C. Salazar #12579/#10C3609

B. Approximate date of filing lawsuit: June 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D. List all defendants: N/A

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): United States Northern District Court

F. Name of judge to whom case was assigned: N/A

G. Basic claim made: Deliberate Indifference To Mental Health Needs

H. Disposition of the case: ■ Pending

I. Approximate date of disposition: N/A


III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Archie Brown V. A. Cabral #4855/ N/A

B. Approximate date of filing lawsuit: September 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D. List all defendants: N/A

E. Court in which the lawsuit was filed, (if federal court, name the district, if state court, name the county): United States Northern District Court.

F. Name of judge to whom case was assigned: N/A

G. Basic claim made: Deliberate Indifference To Mental Health Needs

H. Disposition of the case: Pending

I. Approximate date of disposition: N/A

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Archie Brown V. C.K. Davy #1489/10C3609

B. Approximate date of filing lawsuit: June 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D. List all defendants: N/A

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): United States Northern District Court.

F. Name of judge to whom case was assigned: N/A

G. Basic claim made: Deliberate Indifference To Mental Health Needs

H. Disposition of the case: Pending

I. Approximate date of disposition: N/A


III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Archie Brown V. Chicago Police/Docket number unknown

B. Approximate date of filing lawsuit: 2007 or 2008

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D. List all defendants: Chicago Police Officer's Unknown At This Time

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): United States Northern District Court.

F. Name of judge to whom case was assigned: N/A

G. Basic claim made: Excessive Force

H. Disposition of the case: Settled Out Of Court

I. Approximate date of disposition: Sometime in 2009

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Archie Brown V. L.T. Herhold #20993/#10C3609

B. Approximate date of filing lawsuit: June 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D. List all defendants: N/A

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): United States Northern District Court

F. Name of judge to whom case was assigned: N/A

G. Basic claim made: Deliberate Indifference To Mental Health Needs

H. Disposition of the case: Pending

I. Approximate date of disposition: N/A


III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Archie Brown V. Casey #20935/#10C3609

B. Approximate date of filing lawsuit: June 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D. List all defendants: N/A

E. Court in which the lawsuit was filed, (if federal court, name the district; if state court, name the county): United States Northern District Court

F. Name of judge to whom case was assigned: N/A

G. Basic claim made: Deliberate Indifference To Mental Health Needs

H. Disposition of the case: Pending

I. Approximate date of disposition: N/A

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket name: Archie L. Brown V. Thomas J. Dart, et al., 103610

B. Approximate date of filing lawsuit: July 2, 2010

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: N/A

D. List all defendants: Thomas J. Dart, et. al.

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): United States Northern District Cou

F. Name of judge to whom case was assigned: George W. Lindberg

G. Basic claim made: Deliberate indifference to mental health needs

H. Disposition of the case (for example: Was the case dismissed? Was it appealed?, Is it still pending?): The case is still pending.

I. Approximate date of disposition: N/A

III.   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

    A.   Name of case and docket number: _____

        _____

    B.   Approximate date of filing lawsuit: _____

    C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

        _____

        _____

        _____

    D.   List all defendants: _____

        _____

        _____

        _____

    E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

    F.   Name of judge to whom case was assigned: _____

        _____

    G.   Basic claim made:_____

        _____

        _____

    H.   Disposition of this case (for example:  Was the case dismissed?  Was it appealed? Is it still pending?): _____

        _____

        _____

    I.   Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE.  CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

**IV.**    **Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is
involved, including names, dates, and places.  **Do not give any legal arguments or cite any
cases or statutes.**  If you intend to allege a number of related claims, number and set forth
each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets
if necessary.)

## COUNT I

On or about April 8, 2010, I Archie Brown was transported to the
Roseland Community Hospital by the Chicago Police (See Attached
Exhibit "A"). I was admitted to the emergency room for a self-
inflicted cut to the right wrist (See Attached Exhibit "B"), in-
which was the result of a failed suicide attempt that happen
at the 004th. District Chicago Police Department lock-up
(See Attached Exhibit "C" 1 of 2). I immediately was plac-
ed on suicide watch after I returned to the Chicago Police Dep-
artment from the Roseland Community Hospital, and hours
later I was transported to the Cook County Department of
Correction, (Cook County Jail). I immediately was taken
thru the intake screening process proceedings, where I spo-
ke to numerous medical and mental health staff members.
I first was interviewed by Victoria Furlow, CMT II, in-
which I told her of my suicide attempt, and that I was
hearing voices telling me to do malicious things to other

Revised 9/2007

people, one to do to myself afterwards. and then I

notified psych that I am suicidal (See Attached Exhibit "D").

I eventually was taken to Department of Mental Health Services

and given a brief primary psychological screening by Clifford

Oliver (See Attached Exhibit "E"). I was seen and given ina-

dequate mental health care by Clifford Oliver at the Cook Cou-

nty Department of Corrections. I conveyed to Mr. Oliver that

I was prescribe to take psych-medication and my pills ran out

and I had not taken my psych-meds in about a month, I also

stated to Mr. Oliver that the voices I was hearing in my

head were voices cussing at me and yelling at me, telling me

to do different and malicious things to other people, and

to kill myself afterwards.

    Clifford Oliver put me in harms

way by depriving me of necessary care, in violation of my

Eighth Amendment rights, and Mr. Oliver did not follow

proper protocol violating Cook County Corrections Department

General Order Classification Policy, General Order No. 13.1

(See Attached Exhibit "F") and Cook County Corrections De-

partment General Order Medical And Health Care Services

Policy, General Order No. 12.4 (See Attached Exhibit "G"

406-417) which resulted in a deviation of standard of care by Clifford Oliver, Cermak Health Services Agent.

## COUNT II

Clifford Oliver acted with malice in several respects when he failed to investigate the causation of the self-inflicted injury to my wrist. Mr. Oliver negligently failed to detect, diagnose the mental illness, and after a complete revelation to Mr. Oliver of my recent depression and state of mind, the voices in my head and the suicide attempt at the police lock-up; his only prognosis consisted of me being fit for General Population (See Attached Exhibit "E"). Mr. Oliver diminution of protection of human life and health, and the breach of his independent duty to adequately treat my serious mental condition and refer admission to a treatment modality of the Department of Psychiatry of Cermak Health Services for further treatment falls way below the standard of decency. The dangerous propensities of my recent suicide attempt at the C.P.D. lock-up, should have compelled Mr. Oliver (medical title unknown) to use better medical judgment in view of a potential, and successive suicide fatality, by referring me to have "Suicide Precautions". As a direct and proximate cause of Clifford Oliver's negligence in failing to detect, diagnose my serious mental health needs, a subsequent suicide attempt due to another psychological breakdown happen while I was housed in General Population Cook County Jail.

## COUNT II

Clifford Oliver, of the Cermak Health Services of Cook County Department of Mental Health Services was deliberately indifferent to my serious mental health needs and as a result of this failure to treat my serious mental health needs, I injured my neck, back and leg in a subsequent ~~suicide~~ suicide attempt of me hanging myself from a bed-sheet from the top deck of Division-11, tier C-H, on May 1, 2010 at the Cook County Jail (See Attached Exhibit "H"). I am currently experiencing pain in my back and leg as well as having complication with the range and motion of my neck, that I never received immediate physical medical treatment for my injuries (See Attached Exhibit "I" Unit Log Book 1of2), (See Attached Exhibit "H" Incident Report 1of2) and also see (Exhibit "K" Cermak Health Services Department of Mental Health Services Admission/Evaluation Form)

## COUNT III

Cermak Health Services was deliberately indifferent to my serious mental health needs. Cermak Health Services was grossly negligently in its supervision of Clifford Oliver failure to take precaution of a foreseeable injury of this class of harm physically, emotionally and psychologically to me the plaintiff, makes the hospital and the medical

7

and mental health services conduct dangerous. I the plaintiff
Archie Brown suffered injuries to my neck, back and knee
right side in a subsequent suicide attempt of hanging myself
from a railing at the Cook County Jail on May 11, 2010 in-
which I was denied physical medical treatment of my injuries
to the neck, back and right knee. I was deprived treatment
for my injuries from Officer Rambo #4401 assigned officer
of C-H on the 11 a.m. 7a.m. shift, from the area supervisor:
Sgt. Harris #890 and a Lieutenant Hurd #043 all from Division
XI (See Attached Exhibit "I" Unit Log Book 1 of 2). The dep-
rivation of care by the Cermak Health Services deviated from an
applicable standard of medical care. On 5-11-2010 I attempted
suicide by trying to hang myself from the top deck of Div.
XI on C-H tier at 4 a.m. (See Attached Exhibit "H" Incident
Report 1 of 2). I was taken for a Psych-Evaluation at 4:50 a.m.
5-11-10, and seen by a Joanne Tunney, MHSS (See Exhibit
"K" Attached), again I was seen by another mental health
staff member and I was given inadequate mental health
care that deprived me of neccessary care, in violation of my
Eighth Amendment rights; Joanne Tunney, MHSS also violated
Cook County Corrections Department General Order Mental
Health Care Program Policy, General Order No. 12.4 (See Attached

5

Exhibit "G" ~~(   -   )~~. The likelihood of injury was not gu-
arded against Cermak Health Services and its employees.
Since my harm was a foreseeable consequence of the
Cermak Health Service Agents failure to guard against
the risk of of a fatal suicide, my injuries fell within the
scope of the Cermak Health Services duty of care owed
to me thru the United States Constitution Eighth Amendment.
I also was given a psych-evaluation a couple more times before
the 5-11-2010 attempt suicide incident.

## COUNT V

On April 10, 2010 thru 4-13-2010 my relatives continue
calling the Cook County Jail to warn the Jail of my suicide
ideation, and on 4-13-2010 I was called for a psych-eval-
uation. I again was seen by a Cermak Health Services Agent
Ms. Stein, MHS on 4-13-2010 (See Attached Exhibit "L")
Ms. Stein Admission evaluation form is partialy fabricated
because I told her everything that happen to me prior of
me being admitted in the Cook County Jail, up until then, I
even showed her where on my wrist that I cut myself trying
to comitt suicide, she just in turn cleared me to return
to General Population after I told her of the voices I hear
telling me to comitt suicide, which makes her in violation of
violating my Eighth Amendment right and violating Cook County

5

Corrections Department General Order Mental Heal-
th Care Program Policy, General Order No. 12.4
(See Attached Exhibit "G" 406-417), and on
4-22-2010 I had another psych-evaluation
just before I tried to committ suicide by hanging
I was taken for the psych-evaluation at 1:28 p.m.
to see a Cermak Health Services Agent Danie-
lle Thomas, MHS (See Attached Exhibit "M")
Ms. Danielle Thomas, MHS admission evaluation
form is also fabricated because I told her to
of everything that happen to me prior of me being
admitted in the Cook County Jail, up until then. I show-
ed her where I cut my wrist trying to committ suicide,
as well as my suicide ideation I was having, I even
told the Cook County Corrections Officer about my his-
tory of psych-meds that I am prescribe to take and
suppose to be taking and I also told this same unk-
nown Officer that I was having suicidial ideation
(See Attached Exhibit "N"). The recognized duty of
care owed by the Cermak Health Services, was clea-
rly disregarded when all of the Cermak Health Services
Agents failed to investigate, detect, diagnose and treat
my serious and obvious mental health needs. The
neglect that there were any mental health concerns
by the Cermak Health Services and there
Health Services Agents, was a clear violation
of the plaintiff me Eighth Amendment Rights
to be free from cruel and unusual punishment,
Under the United States Constitution. See Estate

of Cole by Pardue v. Fromn, 11 F. 3d 254 (7th. Cir.
1996); Gregoire v. Class, 236 F. 3d 413 (8th. Cir. 2000);
and Woodward v. Correctional Medical Services, 368
F. 3d 917 (7th. Cir. 2004). The Cermak Health Ser-
vices (Supervisor of all the Mental Health Services
Agents) knew about the unconstitutional conduct of
all the Mental Health Services Agents that I came
in contact with personally in violating my civil rights;
in that they all failed to investigate, detect, diagnose
and treat my serious and obvious mental health
needs. (See T.E. v. Grindle, 599 F. 3d 583,588
(7th. Cir. 2010) (quoting Jones v. City of Chicago,
856, F. 2d 985, 992 (7th. Cir. 1988); Ashcroft
v. Iqbal, 129 S. Ct. 1937, 1948 (2009).

## COUNT VI

All the Cermak Health Services Agents that I perso-
nally came into contact with own individual actions
of a failure to treat, detect, and diagnose for a refer-
ral, after the patient, "me" conveyance of depression
and hearing voices, in addition to the physical evi-
dence of a sliced wrist; amounts to Cermak Health
Services Agents that I personally had contact
with "turned a blind eye," and clear unconstitutional conduct.
The Cermak Health Services Mental Health Services
Agents that I dealt with was subjective ly aware
of the known circumstances that the potential for me
to committ a future fatal suicide was a medical

dilemma that should have received further treatment. The Cermak Health Services Mental Health Services Agents that review or and interviewed me was deliberately indifferent to the risk and clear implications that I might try to committ suicide again. Advanced suicidal tendencies were clearly evident and established. (See; Comstock v. McCrary 273 F. 3d 693 (6th. Cir. 2001). As a direct and proximate cause of the significant physical, mental, emotional and psychological injury that I incurred, in which punitive damages are recoverable under a §1983 action where the defendant (s) had a reckless or callous disregard to a federally protected right of the movant. Security knew about my suicidial ideations from me telling them (See Attached Exhibit N) and also my relatives was calling the Cook County Jail from 4-10-2010 thru 4-13-2010 telling them also of my suicidial ideations in which the transporting Correctional Officer at the Cook County Jail told me that my peoples was calling the Jail telling the Shift Commander and whom ever would listen of my suicidial ideations, I was told this on transport to be evaluated for psych-issues. Cook County Sheriff Thomas Dart oversees the daily activities of the Cook County Jail, and is indirectly responsible for the staff in the Cook County Jail whether it be Security or Medical in which both was knowledgable of my situation, which makes Sheriff

Thomas J. Dart responsible for the lack of inadequate employee training, incomplete intake screening, inadequate suicide watch, in which the Cook County Jail is well aware of these life-threatening deficiencies (See Attached Exhibit #1). Thomas J. Dart, also has violated my Constitutional Eighth Amendment by allowing his security staff and medical employees to violate the Cook County Corrections Department General Orders that are set in place for Pretrial Detainee, so there United States Constitutional Rights will not be violated. I also filed a detainee grievance with the Cook County Department of Corrections, (See Attached Exhibit P)

**WHEREFORE**, Plaintiff, ___Archie  Brown___ , prays for entry of an order and judgment granting the following relief:

A.   Issue an order declaring that the defendant(s) HAVE violated plaintiff's ___Eight___                        Amendment rights guaranteed to him under the Constitution of the United States;

C.   Issue an order awarding plaintiff compensatory damages in the amount of $ ___75,000.00___ , and punitive damages in the amount of $ ___150,000.00___ .

D.   Issue an order awarding to plaintiff his costs and attorney's fees; and

E.   Grant such additional or other relief as this Court deems just and proper.

Dated: ___March   14th.   2012___

_Archie Brown, N-21714_
**Plaintiff - Petitioner**

-7-

EXHIBIT A

CB #: 17841041

**Chicago Police Department - ARREST Report**

BROWN, Archie

## ARREST PROCESSING REPORT

| Action | By | | Destination | Reason |
|--------|-----|----|-------------|--------|
| RELEASED BY | #1803 | Gilliam, Darryl | 08 APR 2010 16:50  District 004 Lockup  4:50 pm | |
| RECEIVED BY | #20993 | Herhold, Lawrence J | 08 APR 2010 16:50  Area 2  4:50 pm | Investigation |
| RECEIVED BY | #6739 | Carillo, Catherine | 08 APR 2010 23:16  Roseland Community  Thrus.  11:16pm | Taken To Roseland Hosp Per Dt Casey#20935 For Treatment |
| RECEIVED BY | #12211 | Cox, Deron H | 09 APR 2010 03:16  District 004 Lockup  Fri.  am | Returned From Area 2 |

**Watch Commander Comments:**

#262  Judon, Cassandra L

09 APR 2010 04:33 am Fri.

Operations Command notified @ 0420 hours. Log #1035271 and EO #10-15 obtained from P.O. Chibe #7303

#262  Judon, Cassandra L

09 APR 2010 04:20 am Fri.

Per Detective Herhold #20993 Subject was taken to Roseland Community Hospital for superficial wounds to each wrist. Arrestee treated and released from hospital. Subject is on Suicide Watch in the 004th District lock-up.

#337  Moore, Marc K (PC0P491)

10 APR 2010 04:35 am Sat.

Duty Judge approved probable cause to detain at 2130 hrs on 09 Apr 10        9:30pm Fri.

#337  Moore, Marc K

09 APR 2010 20:48 Fri.  8:48pm

Det. Herhold is taking the offender to see the Duty Judge.

DOES NOT APPLY TO THIS ARREST

REL w/o CHARGING

## ARRESTEE PROCESSING PERSONNEL

| | | | | Beat |
|--|--|--|--|------|
| Searched By: | | GRAHAM, D J | | |
| Lockup Keeper: | #12211 | COX, D H | | |
| Assisting Arresting Officer: | | | | 0406G |
| Assisting Arresting Officer: | | | | 0406D |
| Assisting Arresting Officer: | | | | 0406D |
| Assisting Arresting Officer: | | | | 0406G |
| Assisting Arresting Officer: | #7894 | BICKETT, E J | | 0457 |
| Fingerprinted By: | | GRAHAM, D J | 8:47pm | |
| Detective : | #20993 | Herhold, Lawrence J | 09 APR 2010 20:47 | 5269 |

## APPROVAL PERSONNEL

| | | | | Beat |
|--|--|--|--|------|
| Final Approval of Charges : | #337 | MOORE, M K | 09 APR 2010 22:55  10:55pm | |

Exhibit "B" (18 of 3)



**Roseland**
Community Hospital

45 West 111ᵗʰ St          Chicago, Il 60628

10635408    4/08/2010
5/22/1903   0001114040
BROWN, ARCHIE      M 16Y
E EMERGENCY DEPARTMENT SVS

## ARRESTEE MEDICAL CLEARANCE REPORT

Please Print the Following:

Arrestee's Name: Brown, Archie

Date of Exam: 4·8·10          Time of Exam: _____

Name of Hospital: <u>Roseland Community</u>

Name of Examining Physician: _____

Physician Check Appropriate Box:

___✓___ I have examined the arrestee and find him / her not in need of hospitalization.
Any medical orders for the taking of medications are included in my remarks below.

_____ I have examined the arrestee and find him / her in need of hospitalization.

_____ The arrestee has refused treatment AGAINST MEDICAL ADVICE.

Physician's Remarks:

Pt is examined, has superficial
self inflicted cut to (R) wrist. Wound
irrigated c Saline & Betadine, Bacitracin,
Gauze & Katips bandage applied. Given a
dose of tepex 500 p.o. & Keppra, 500 p.o.
Ik to f/u c Cook County Physician

Physician Signature: _____

Brown 000083

APR 09 2010 09:20    From:1 312 747 3120                                          Page:4/5


# Roseland
Community Hospital

| 10535496 | 4/06/2010 |
| --- | --- |
| 5/22/1963 | 0001114040 |
| BROWN, ARCHIE | M 46Y |

E EMERGENCY DEPARTMENT SVC

**EMERGENCY DEPARTMENT DISCHARGE INST**

Patient's Name _____

Time Registered ____    Time Released ____

The exam and treatment you received in the Emergency Department were for an urgent problem and are not intended as complete care. It is important that you follow up with a doctor, nurse practitioner, or physician's assistant for ongoing care. If your symptoms become worse or you do not improve as expected and you are unable to reach your usual health care provider, you should return to the Emergency Department. We are available 24 hours a day.

You were treated in the Emergency Department by

*Dr. Bajja*

Your diagnosis is

*superficial Cut D Wrist*

What to do:
- Follow the instructions on the additional sheets you were given
- Please call as soon as possible to make an appointment to be seen in ___ days for follow-up at your Health care provider for follow-up care. Phone (4)-1500
- Take this paper with you when you go to your follow-up visit.
- If you have any problem arranging the follow-up visit, contact the Emergency Department immediately.
- Take all medications as directed.
- Studies done in the Emergency Department:
  LAB                     EKG
  Pulse Oximetry
  X-RAY                   CULTURE

The emergency physician provided an on-the-spot interpretation of your x-rays and/or EKG. A final interpretation of these tests will be done by a specialist. If a

change in your diagnosis or treatment is needed, we will contact you. It is critical that we have a phone number for you.
☐ Pick up your x-rays in Radiology before your follow-up appointment.
☐ Culture results take 48 hours. Your results are given to the follow up doctor. The Emergency Department will contact you if the results change in your treatment.
☐ Additional information or instructions

**MEDICATIONS GIVEN IN THE EMERGENCY DEPARTMENT**
*Bactrim ____*

**OVER-THE-COUNTER MEDICATIONS**
*(Per Package Directions)*

**PRESCRIPTIONS**
*Keflex ____*

If side effects develop, such as a rash, difficulty or a severe upset stomach, stop the medication, your doctor or the Emergency Department.

I understand that the emergency care which I received is preventive care of an emergency nature. It is in no way is means intended to be a complete diagnosis or complete medical care. I have been instructed to obtain for continued medical diagnosis and care, and I will do so. I have received a copy of these instruct

**Brown 000084**

APR 09 2010 09:20    From: 312 747 3120                          Page:5/5

## ROSELAND COMMUNITY HOSPITAL
5 WEST 111TH STREET    CHICAGO, ILLINOIS 60628

10535498    4/08/2010
5/22/1963    0001114040
BROWN, ARCHIE    M 46Y

NAME _____ E EMERGENCY DEPARTMENT SVS

ADDRESS _____

① Keflex 500mg Part 1 D
                    x 1 week
                              ②

② Skinprofen 500mg Po
        (Ashis Prn) Food
                    30

Refill: Ø    Times

Brown 000085

Exhibit C 1 of 2

APR-09-2010 14:08 From:DST5            13127475935            To:3127453591            P.1/14

## ILLINOIS DEPARTMENT OF CORRECTIONS

## Report of Extraordinary or Unusual Occurrences

Report all extraordinary or unusual occurrences involving detainees in writing within 72 hours to the Office of Jail & Detention Standards. When a delay in the written report is unavoidable, make the report by telephone and submit the written report as soon as possible to:

**Office of Jail & Detention Standards**
**Second Floor Gymnasium**
**1301 Concordia Court, P. O. Box 19277**
**Springfield, Illinois 62794-9277**
**Telephone: (217) 522-2666, ext. 4212**
**Fax: (217) 522-3906**

Check one: ☐ County
☒ Municipal (except Chicago)
☐ Chicago Police Department, include
R.D. Number: HS 246824

Facility Name: 005th District Chicago Police Department

Telephone #: (312) 747 8210

Address: 727 E. 111th st        Chicago        il   60628
Street                          City         State  Zip Code

Date of Occurrence: 08Apr10        Time of Occurrence: 2315        ☐ a.m.  ☒ p.m.

Type of Occurrence: ☐ Suicide (method)
☐ Homicide     ☐ Homicide Attempt    ☐ Escape          ☒ Suicide Attempt (method) Cut wrist
☐ Battery      ☐ Riot or Rebellion   ☐ Escape Attempt  ☐ Fire           ☐ Serious Injury
☐ Fighting among Detainees  ☐ Sex Offense  ☐ Assault on Staff  ☐ Assault among Detainees
                            ☐ Restraints Used  ☐ OC Spray Used  ☐ Other (specify)

| Detainees Involved | | | |
|---|---|---|---|
| Name | Date of Birth | Date Confined | Arresting Charge |
| BROWN, Archie | 22 may 1983 | 08 Apr 2010 | Armed Robbery |

Any injuries? ☐ No  ☒ Yes, (briefly describe):   Superficial cut to right wrist

Any resulting death? ☒ No  ☐ Yes, attach coroner's report or forward upon completion and explain below:

Name of deceased: _____

Specific cause of death: _____

Date & time of death: _____

Was deceased on suicide watch at or immediately before time of death?  ☐ Yes   ☐ No

Reported by: _____

Was deceased examined by a physician?  ☐ No   ☐ Yes, on: _____

Did deceased display signs of illness?  ☐ No   ☐ Yes, describe: _____

Brown 000081

APR-09-2010 14:08 From:DST5          13127475935          To:3127453591          P.2/14

## Detainees Interviewed

| Name | Date of Birth | Date Confined | Arresting Charge |
|------|---------------|---------------|------------------|
| DNA  |               |               |                  |
|      |               |               |                  |
|      |               |               |                  |
|      |               |               |                  |

## Officials Interviewed

| Name | Title |
|------|-------|
| None |       |
|      |       |

**Principal cause of occurrence:**

Minor abrasion to right wrist caused by unknown object

**Summary of specific details of occurrence (include date and time):**

The arrestee while being detained by Area 2 Property crimes personnel in an interview in Area 2 Detective division was found to have a small minor abrasion right wrist are caused by an unknown object. Arrestee was transported to Roseland Hospital treated and released.

**Recommendations to prevent future occurrences:**

None

| Capt Thomas McMahon | 28 | |
|---------------------|----|--|
| Print Reporting Officer's Name | Badge # | Reporting Officer's Signature / Date |

| Capt Thomas McMahon | 28 | |
|---------------------|----|--|
| Print Shift Commander's Name | Badge # | Shift Commander's Signature / Date |

Note: Use of this form is required; please do not alter format. Where available, this form may be completed and submitted on-line as directed by the Office of Jail and Detention Standards.

The Illinois Department of Corrections is requesting disclosure of information necessary to accomplish the statutory purpose as outlined in 730 ILCS 5/3-15.2. Disclosure of information is MANDATORY. Failure to provide the information could result in a court order requiring compliance with 20 Ill. Adm. Code 701, 702, or 720.

Distribution: Office of Jail & Detention Standards; Reporting Facility

Page 2 of 2
Printed on Recycled Paper

DOC 0135 (Eff. 9/2002)
(Replaces DT 4rd & 3td-T's)

Brown 000082

*Exhibit D*

---

**CERMAK** | **...ES OF COOK COUNTY** | **Medical Intake Form** (PA)

Name: **BROWN, ARCHIE**
DOB–08/23/1963 Age–44Y FC– 04/102010
Aca20100410060 sen MR000513612

...st Name: **ARCHIE**    Date: **4/10/10**

CCDOC# **0060**    Division: _____

### Consent for Treatment

I consent to a medical and mental health history and physical including screening for tuberculosis and sexually transmitted diseases as part of the intake process of the Cook County Jail. I also consent to ongoing medical treatment by Cermak Health Services staff for problems identified during this process. I understand I may be asked to sign forms allowing other medical treatments. I understand that every effort will be made by CHS staff to keep my medical problems confidential. I understand the policy of CHS regarding access to health care at Cook County Jail.

*Archie Brown*
*patient's signature*

### Medical History

| | | | Remarks (reference by question number) |
|---|---|---|---|
| 1. Seizures/ Epilepsy / Fits | Yes | No | |
| 2. Heart Trouble / Heart Attack | Yes | No | |
| 3. High Blood Pressure | Yes | No | |
| 4. Asthma / Emphysema | Yes | No | |
| 5. Diabetes | Yes | No | |
| 6. Cancer | Yes | No | |
| 7. Assistive Devices (prosthesis, cane, etc.) | Yes | No | |
| 8. Mental Illness | Yes | No | |
| 9. Tuberculosis | Yes | No | |
| 10. HIV/AIDS | Yes | No | |
| 11. Liver Disease (specify)/Hepatitis B/C | Yes | No | |
| — ever had DTs (delirium tremens) | Yes | No | |
| 12. Kidney Disease | Yes | No | |
| 13. Peptic Ulcer Disease | Yes | No | |
| 14. Sickle Cell Disease | Yes | No | |
| 15. Other (specify) | Yes | No | |

Remarks:
1) >15 YRS → CASE
SEIZURE X 2 WKS →
LAST MED DOSE X 12WKS

3)10-15 YRS → CASE
MED DOSE X 12MO

8) BIPOLAR/SCHIZO X 8
YRS → LAST MED DOSE X 3 WKS

15) TX @ ROSELAND HSP 12-D PE S/D "I TRIED TO
SLIE MY WRISE"

HCTZ - PAXIL - TRAZADONE - DEPAKOTE - RISPERDOL
KEFLEX - MOTRIN

**Form Reviewed:**
Date ___/___/___
Sick-Call Needed: (Y) / N
   RHS
Scheduled: ___/___/___
-by _____

### Current Problems

| | | |
|---|---|---|
| 1. On Medications (list) | Yes | No |
| 2. Under Doctor Care | Yes | No |
| 3. Dental Problems (tooth ache, bleeding gums, etc., refer to dental if present) | Yes | No |
| 4. Current Disabilities (assistance with ADL) | Yes | No |
| 5. Recent trauma or hospitalization | Yes | No |
| 6. Current cough, fever, night sweats | Yes | No |
| 7. Current vaginal/penile discharge/sores /dysuria | Yes | No |
| 8. Other (specify) | Yes | No |
| 9. Females – Menstrual History – LMP | / | |
|    Currently pregnant | Yes | No |
|    Number of past pregnancies / deliveries | / | |

Allergies: NKA

Understands English? (Y) / N

### Substance Use

| | Tobacco | Alcohol | Injection Drug Use | Illicit, Non-Injection | Methadone | Other |
|---|---|---|---|---|---|---|
| | Y (N) | (Y) N | Y (N) | Y (N) | Y (N) | Y (N) |
| How Long ? (years) | | | | | | |
| Last Used (today, yesterday, 1 week etc.) | | | | | | |
| How much per day? | | | | | | |

Comments: PT SYS RELEASED FROM ROBINSON CORR CENTER FEB OF 2010 WAS GVN 2-WKS
WORTH OF PSY MEDS - LAST TKN EARLY MARCH TO S/D "I HEAR VOICES." PSYCH NOTIFIED
SUICIDAL

*V. Furlow* CMT/ERT
*signature of CMT/Paramedic/Title*

**Victoria Furlow, CMT II**

Name–BROWN, ARCHIE
DOB–08/23/1963 Age–44Y FC– 04/102010
Aca20100410060 sen MR000513612

*Exhibit - E*

**Cermak Health Services of Cook County**
2800 S. California Avenue
Chicago, IL 60608

**Department of Mental Health Services**
**Brief Primary Psychological Screening Tool (RCDC)**

Last Name: **Brown**   First Name: **Archie**   DOB: **5/22/63**   DOC#:

Address: **14121 So Tracy - Riverdale I**   Phone: _____

Charge: **Aggv. Robbery**   Bond: **20,000**   Court: **4·15·10**
1st Degree murder Alleged Victim: family __ friend __ close associate __ none __

Race: ☐ W  ☒ B  ☐ Sp  ☐ Asian  ☐ Other: _____  SS#: _____

Employed: ☒ Yes  ☐ No  Occupation: **Landscape**

1.  Have you ever been in Cook County Jail before? ☐ No  ☒ Yes  What division? **11**

2.  Have you ever been hospitalized for psychiatric treatment? ☒ No  ☐ Yes. How many times? _____
    Last date: _____  What reason: _____  Where: _____

3.  Are you currently receiving outpatient psychiatric treatment? ☒ No  ☐ Yes  Why? _____
    Last visit date: _____  Location: _____  Doctor's name: _____

4.  Are you now taking psychotropic medication(s)? ☒ No  ☐ Yes  Name(s): _____

5.  Do you drink alcohol? ☐ No  ☒ Yes  How much? **Beer**
    Do you use drugs? ☒ No  ☐ Yes  What drugs? _____  How much? _____

6.  Have you ever attempted suicide? ☒ No  ☐ Yes  Last attempt: _____  How? _____

7.  Do you feel suicidal now? ☒ No  ☐ Yes

8.  Are you feeling homicidal now? ☒ No  ☐ Yes  Explain: _____

9.  Have you ever had special education classes? ☐ No  ☒ Yes  Explain: **BD**

10. Are you now homeless? ☒ No  ☐ Yes  Where do you stay? _____

11. Are you a Veteran? ☒ No  ☐ Yes  Branch of Service/Type of Military Discharge _____

Is this detainee's behavior appropriate in the RCDC area? ☒ Yes  ☐ No  Describe: _____

_____

Mental Health Screening Plan: ☐ General Population  ☐ Admission/Evaluation Form
☐ Mental Health Secondary Interview  ☐ Other: _____

Signature Mental Health Staff _____   Clifford Oliver

Date: **4·10·10**   Time: **4.05p**

PIN= BROWN, ARCHIE
DOB= 05/22/1963 Age= 45Y FC= 04/19/2010
Adr20100410060 MR=000051351z

Form#: 87417   Rev: Nov. 2004

| COOK COUNTY CORRECTIONS DEPARTMENT GENERAL ORDER | DISTRIBUTION | EFFECTIVE DATE | GENERAL ORDER NO. |
|---|---|---|---|
| | A | 10/02/87 | 13.1 |
| CHAPTER CLASSIFICATION | | AMENDS | RESCINDS |
| SUBJECT PROCEDURE FOR INTAKE PROCESSING OF NEW INMATES AND COURT RETURNS | | 13.1 4/84 | |

**I.  POLICY**

Classification is an ongoing process that occurs at frequent intervals during the inmate's stay in the facility.  It is used to identify and separate inmates with distinct behavioral patterns into groups to ensure the safety and security of the individual inmate as well as the smooth operation of the detention center. Written policy prohibits segregation of inmates by race, color, creed or national origin.

**II.  DEFINITIONS**

As used in this document, the following definitions shall apply:

A.  **Initial Classification**

The first step in the classification process where, through the use of risk assessment criteria, initial housing placement is decided.

B.  **Reclassification**

Any classification status change subsequent to an inmate's primary classification.  This may occur on a scheduled or an as needed basis.

C.  **Special Need Inmates**

Include emotionally disturbed, mentally retarded, mentally ill, aged and physically handicapped inmates.  Special needs inmates are also those who present a high risk to themselves or to others and who require protective custody.

**III.  PROCEDURES**

A.  The transportation officers bring the inmates through the dock area of the receiving room.  These inmates are place in one of the available receiving room bullpens.  While the transportation officer is taking off the handcuffs, a receiving room officer starts to call the inmates out of the bullpen, starting with court returns.

The receiving room officer calls the name of the inmate, and when the officer gets a response from the inmate, the officer will compare the inmate's photo ID in the inmate's Commitment/Mittumus Paper, to the inmate.

Once all the court return inmates are accounted for on each transportation run, the inmates are given their court return

330
CCSAO

passes, strip searched and taken to the holding area of the receiving room. Upon arriving the inmates are put in an available bullpen until they are picked up by an officer from their division.

B. The inmates left in the bullpen after the court returns are removed, are considered new inmates, meaning they did not stay in the Department of Corrections the previous night, and must be assigned a Cook County Department of Corrections identification number and be processed. The receiving room officer calls the inmate's name individually, will check an identifying number written on the inmate's hand with a number written on the Commitment/Mittumus Paper. (The identifying numbers are placed on the inmate's hand and Mittumus Paper in the court rooms by court room personnel). When the receiving room officer matches these two numbers and is sure that he has the correct inmate, the inmate is removed from the bullpen, assigned a Cook County Department of Corrections identification number, and sent to the Bureau of Identification for a photograph. After the photograph is taken the inmate is placed back in the bullpen to await processing.

C. The inmate's Commitment/Mittumus Paper is taken to the booking office, and the inmate is booked. This means that the inmate's case number bond amount, next court date, or length of sentence(s) charge(s), and the committing judge are recorded on the history card. Forms for the State's Attorney, paramedics and psychiatric team are also partially filled out at this time. All of these forms are then put together in a packet.

D. The inmate's packet is taken to the fingerprint table and given to the officer assigned to fingerprint. The fingerprint officer calls the inmate out of the bullpen and checks the identifying number on the inmate's hand against the number on the Commitment/Mittumus Paper. Once the officer is sure that he has the correct inmate, he has the inmate sign the history card, ID card, and he fingerprints the inmate's right index finger on the history card, Commitment/Mittumus Paper, and the comparator system ID card. The Commitment/Mittumus Paper is forwarded to the officer responsible for entering the Commitment/Mittumus Paper information into the computer. The remainder of the packet is sent to the property cage along with the inmate.

E. At the property cage, the inmate turns in all his personal property and money to the property officer. The property is inventoried and put in a property envelope with a copy of the receipt listing all the inmate's property and money. Both the inmate and the property officer sign this receipt. When this step is completed, the inmate and his packet are sent to the interview line.

F. On the interview line, the inmate has a short personal history taken by a receiving room officer. The history includes home address, date of birth, emergency contact, previous arrests and incarcerations, etc. (See attached history card). The inmate

331
CCSAO

2

is also asked if he is a homosexual. All the information given by the inmate is recorded on the history card by the interviewing officer. The history card is then given to an officer from the computer room who puts the history information into the computer. The interviewing officer has the inmate complete the State's Attorney form which pertains to whether the inmate has any other pending court cases that he might miss while incarcerated.

G. The interviewing officer sends all the completed forms and the inmate to a psychiatric officer from the RTU program, and the psychiatric officer gives the inmate the primary psychological screening. This interview is intended to screen out the inmates who might not be able to function in the general population. The psychiatric officer refers the inmate to a non-security member of the psychiatric team who gives the inmate a more thorough psychiatric evaluation. If after the secondary interview, the team feels the inmate has a definite problem, the team will write a referral and have the inmate assigned to the RTU building for treatment. Should the inmate in either the primary or secondary evaluation be found capable of functioning in the general population, the inmate along with his packet is sent to the tiering officer.

H. The tiering officer assigns the inmate to a division for housing, taking into consideration the bond, charge, number of previous arrests, and the size and temperament of the inmate. When an inmate is assigned to a Division, the tiering Officer places a wristband on the inmate. The wristband contains the inmate's name, Cook County Department of Corrections identification number, bond amount, age and Division assigned. The receiving room does not assign inmates to particular wings, tiers, or dorms; only to a Division. The only exception to this, is inmates who are known or admitted homosexuals and female impersonators. These inmates are assigned to Division 8 directly from the receiving room. The inmate's housing assignment is then put into the computer by the tiering Officer, and the inmate is sent to see the paramedics for a physical examination.

I. During the medical examination, if the inmate has a medical problem the paramedics cannot handle, the paramedics would refer the inmate to a physician's assistant for further medical treatment. If the Physician's Assistant feels that the inmate's medical condition will prohibit the inmate from being in the general population, the Assistant refers the inmate to be housed in Dorm #3 Annex, Cermak Hospital, or Cook County Hospital. This housing assignment would supercede the tiering Officer's assignment and the inmate would be given a new wrist band and his/her housing assignment changed in the computer.

J. After the medical examination, the inmate is strip-searched to check for contraband, and upon completion of the search is allowed to make three phone calls.

K. Inmates are placed directly into the bullpens because they do

not change into a DOC uniform until they arrive at the correct division.

During the moving of the court returns and the processing of new inmates, all of the inmates are kept together in the bullpens, and during the intake process until space permits them to be moved. The only exceptions to this procedure would be inmates that require special handling. This would include inmates who are:

1. Security or escape risk

2. Aggressive

3. Serious mental disorders

4. Suicide risk

5. Need protective custody

6. Uncooperative

7. Medical problems

These inmates should be isolated as much as space permits, and would be processed on an individual basis as receiving room officers became available to do so. The inmates without identifying numbers on their hand would be isolated only until a complete set of fingerprints could be taken and sent through the Telefax machine to the Illinois Bureau of Identification to verify the inmate's identify. Once a positive identification is made, the inmate can be removed from isolation unless there is another reason for needing special handling.

L. Inmates who have their bond posted while going through the intake process are moved ahead of the other inmates in order to speed up their release from the Department of Corrections. In some instances, the psychiatric interview and the medical examination are eliminated.

/. CLASSIFICATION PROCEDURE

Division I: Capacity 776

Increased Maximum Security Inmates

Escapees and all sentenced inmates and convicted felons regardless of age: disciplinary inmates, only when conduct report accompanies an inmate. The conduct report will be signed either by a Sergeant, Lieutenant, Captain or Superintendent. A conduct report not signed by either of the above will be rejected. Only serious disciplinary inmates will be housed in this division, all minor disciplinary inmates will be housed within their division. All administrative transfers must be approved by the Shift Commanders and/or the Divisional Superintendents. Reason for the administrative transfer must have proper paperwork accompany the

| COOK COUNTY CORRECTIONS DEPARTMENT GENERAL ORDER | DISTRIBUTION | EFFECTIVE DATE | GENERAL ORDER NO. |
|---|---|---|---|
| | A | 04/01/84 | 11.8 |
| CHAPTER MEDICAL AND HEALTH CARE SERVICES | AMENDS | | RESCINDS |
| SUBJECT MENTAL HEALTH CARE PROGRAM | | | |

## I. POLICY

The Department of Psychiatry operates on the basis of the theory that (abnormal) behavior results from various internal and external systems depending upon the individual. Often the psyche is effected in a conflictual manner, thus producing pain and suffering to the total system. The total system encompasses the individual, his family, friends, community, as well as all that the person interacts with. It is the purpose of this Department to alleviate this pain and suffering through intervention with the use of various internal and external systems, thereby, re-establishing the individual's pre-morbid personality. Whenever feasible and possible an attempt will be made to produce changes in the individual's acquired behavior thus causing positive psychological growth and societal impact.

Normally security is the priority consideration in any issue, except where there are therapeutic considerations. In such situations where the therapeutic decision would be the primary consideration, every effort will be made to make a joint decision. (See Harrington v. DeVito et. al).

If such resolution is not forthcoming, the matter shall be directed to the next person in the chain of command. Specifically, the Line Officer and direct client therapist, when in conflict with regard to a treatment issue would each report to his or her respective superior. A staff meeting will be convened with both superiors addressing the issues brought to them by their respective subordinates. If a satisfactory resolution regarding the conflict is not achieved at that level of command, the Chief of Security, Coordinator of Clinical Program) would then be involved in the decision making process. Should resolution of the conflict not be achieved at that level, the Director of Security for the Cook County Department of Corrections would meet with the chairman of the Department of Psychiatry to address and resolve the issue.

All inmates are provided access to a comprehensive mental health program within the compound of the Cook County Department of Corrections. The mental health program is designed to examine, diagnose and provide access to treatment for all inmate patients who have significant medical illness.

A.  Screening Services

   Psychiatric screenings are provided by qualified mental health professionals who have been trained and are supervised by licensed individuals in their respective disciplines.

B.  Mental Health Transfers

The Department of Psychiatry of Cermak Health Services has an
affiliation and funding agreement with the Illinois Department
of Mental Health. Any inmate whose condition is beyond the range
of services available within the programs provided by the
Department of Psychiatry of Cermak Health Services will be
transferred to a Department of Mental Health treatment facility
based upon the interview and disposition provided by Illinois
Department of Mental Health and Developmental Disabilities
personnel. The screening and referral shall be provided in
compliance with Illinois statutes regarding treatment of mentally
disturbed individuals as reflected in current Illinois statutes.

C. __Program Changes__

Except for emergencies, all program changes regarding inmates
identified as recipients of psychiatric services (mentally ill
and retarded) shall be made only after consultation between the
respective supervisors of security and psychiatric services.

__DEFINITIONS__

As used in this document, the following definitions shall apply:

__Admission Criteria__

A set of guidelines utilized to determine the propriety of
treatment at the Cook County Department of Corrections.
Admission to a treatment modality of the Department of Psychiatry
of Cermak Health Services or by a professional staff of the
Department of Psychiatry. The admission is based upon the
the clinical evidence warranting psychiatric treatment, and the
availability of the appropriate treatment modality. It is for
this purpose that admission is made only by the appropriate
professional staff. The staff will follow the admission policy
and procedure statements detailed in policy 3.301, 3.401, 5.501
and 3.601 as stipulated in the Policy and Procedure Manual of the
Department of Psychiatry.

B. __Acute Care Unit__

The Acute Care Unit (ACU) is the psychiatric treatment unit in
Division III (Women's Division). The unit is designed to provide
psychiatric services to female patients of the Department of
Psychiatry who are in need of residential treatment isolated from
the normal jail population. Patients housed on the unit are
provided by the Department of Mental Health at a State funded
facility for in-patient treatment.

C. __Ambulatory Care__

The Ambulatory Care division of the Department of Psychiatry is
the unit of the Department of Psychiatry that provides follow-up
and consultation services to psychiatric patients housed in the
general population of the Cook County Department of Corrections.
Services are provided by the Department of Psychiatry Mental
Health Professionals and other medical staff with the goal of

maintaining the patient in the general population and facilitating maximizing his/her adaptive behavior while in the most appropriate environment. The Ambulatory Care Unit provides services similar to the treatment provided by a community mental health center. The Ambulatory Care Unit also provides staffing for the Diagnostic Unit of the Department of Psychiatry.

D. **Acute Psychiatric Intensive Care Unit**

The Acute Psychiatric Intensive Care Unit (APICU) is a ward at the North end of the 3rd floor of Cermak Hospital Building. It is a comprehensive psychiatric in-patient unit comparable to an Illinois Department of Mental Health and Developmental Disabilities Psychiatric Intensive Care Unit. Treatment focuses upon quick remediation of the patient's symptomatology and psychopathology, with remission of symptoms being one of the criteria for discharge from the unit. Admission to APICU is made by professional staff of the Department of Psychiatry and a physician's order.

E. **Discharge Criteria**

Discharge criteria from various components of psychiatric treatment are determined by the Department of Psychiatry. The criteria are applied on an individual case basis, depending upon the specifics of the patient's presenting problems. The clinical team at each of the treating sites makes recommendations for discharge to the physician responsible for the treatment modality. Based upon the team's recommendations and the psychiatrist's clinical assessment of the patient's condition, a discharge to an appropriate modality of treatment is made.

F. **Isolation**

Isolation is a psychological/psychiatric intervention involving the removal of the patient from disturbing stimuli or other milieu into a more controlled environment. As contained here, isolation is the process of removing the patient from the milieu into an identified area of seclusion with the intent of allowing the patient to adjust to the anxiety he or she is experiencing and be able to re-adapt to the milieu.

G. **Parenteral Administration**

Not intestinal; administered other than through the digestive tract, i.e., intravenously, intramuscular.

H. **Psychiatrically Trained Officer**

The psychiatrically trained officers (Psych Officers) are individuals who have completed a 10 week specialized training course from the Department of Psychiatry of Cermak Health Services or its designee, and who are assigned to psychiatric service areas.

I. **Residential Treatment Unit**

408
CCSAO

The Residential Treatment Unit (RTU) is a psychiatric residential program. The patient population is typical of patients hospitalized at state facilities in chronic need of mental health care.

J.  **Restraints**

A medical procedure used when clinically indicated to prevent a patient from harming themselves. The use of restraints for therapeutic purposes are implemented only upon recommendation and medical order initiated by the appropriate staff. Restraints are used exclusively to provide treatment to a patient who is an imminent threat to themselves or others as a function of psychiatric patients to insure the propriety of the order and the monitoring of the medical condition of the patient while he or she is restrained.

K.  **Substance Abuse Program**

The Substance Abuse Program is a poly-substance abuse treatment program housed within the RTU building. The program is operated by Gateway House Foundation Inc. and Treatment Alternatives to Street Crimes (TASC). The purpose of the Substance Abuse Program (SAP) is to provide a highly structured introduction to chemical abuse rehabilitation to those individuals who are referred and accepted into the program. The program linked individuals who have been discharged from the Cook County Department of Corrections to facilities outside the Cook County Department of Corrections complex when indicated. The program is a peer group program using a multifaceted approach to treatment. Acceptance into the program is based upon staff determination or court order. Individuals with a bond exceeding $25,000 dollars are excluded from the program unless they are remanded to the program by a court order.

  **Suicide Precautions**

Suicide precautions are medical procedures initiated as a consequence of a physician or clinical staff decision to observe the patient for the potential to be harmful to himself or herself or others. Suicide precautions are utilized in the following areas: ACU, APICU, RTU. Depending upon the nature of the patient's psychiatric condition, various means of precautions are utilized as determined appropriate by the clinical staff.

**PROCEDURES**

A.  **Mental Health Services**

The following services are available to inmates coming into the Cook County Department of Corrections.

1.  New admission screenings for all new detainees by psychiatrically trained officers and clinical staff of the Department of Psychiatry. Referral is made by the psych officer to the

From: ... 09/14/2011 16:08 #565 P.002/004

# COOK COUNTY DEPARTMENT OF CORRECTIONS
## INCIDENT REPORT

Effective: 04/09

Please Print All Information

| | | |
|---|---|---|
| **Division/Unit:** Div XI | **Living Unit/Location:** Tier CH / Top Deck | |
| **Incident Date:** 11 May 2010 | **Incident Time:** 0400 HC | |
| **Injuries/Hospitalization:** ☐ Yes ☑ No | **Contraband Found:** ☐ Yes ☐ No | |
| **Restraints/Force Used:** ☐ Yes ☑ No | **Property Damage:** ☐ Yes ☐ No | |
| **Weapon(s) Involved:** ☐ Yes ☑ No | **OPR Notified:** ☐ Yes ☐ No | |
| **Arrest(s) Made:** ☐ Yes ☑ No | **ADO Notified:** ☐ Yes ☐ No | |
| **Incident Videotaped:** ☐ Yes ☑ No | **Videotape No.** n/a | |
| **Videotape No.** n/a | **Videotape No.** n/a | |

| Inmate(s)/Personnel Involved: | ID/Star #: | Witnesses to Incident: | ID/Star #: |
|---|---|---|---|
| Brown, Archie #2010-0410060 | | Thompson, Dianne 2009-0046198 | |
| O/C Maldonado #8972 | | Thompson, Shawn #2010-0301083 | |
| O/C Ramos # 4001 | | | |

### Statement of Facts: (Narrative)

On the above date, time and location Detainee
Thompson, Dianne #2009-0046198 informed R/O that
Detainee Brown, Archie #2010-0410060 was going
to try to hang himself as R/O stepped onto the
tier Detainee Brown jumped from the outside of
the top deck railing, with a sheet tied around
his neck and the other end tied to the railing.
The sheet came untied from the railing and detainee
Brown fell to the floor. R/O escorted Detainee Brown
off the tier with O/C Ramos. Supervisor Notified.

| | Date: | Time: |
|---|---|---|
| **Signature & Star # of Reporting Personnel:** _____ #8972 | 11 May 2010 | 0418 HC |
| **Signature & Star # of Supervisor:** _____ Navas 810 | 11 May 2010 | 0540 |

### Administrative Assessment:

Chief Fernandez notified @ 0644

SEE continue assessment.

| **Signature & Star # of Supervisor:** | **Incident Tracking No.:** | **Date:** | **Time:** |
|---|---|---|---|
| | 10-05-11-0279 | 11 may 10 | 0542 |

Part I – Executive Director (white)
Part II – Superintendent (canary)

Part III – Assistant Executive Director (pink)
Part IV – File (goldenrod)

459
CCSAO

From:

Please Print All Information    Effective: 04/09

**Incident Date:** 11/06/10    **Incident Time:** 0460

## Continuing Statement of Facts (Narrative):

## Continuing Administrative Assessment:

Detainee Brown #° 2010-0410630 showed no sign of serious injury. When this incident had been reported to State Welfare area by the responding officers, when ask why did he jump, Brown replied I have psych meds, I hear voices. Brown then complained of headaches, when ask of other medical complaints, Brown complained that hit his head (Back of his head) and that he'd hurt his right knee. Brown was transported to Cermak E.R. for psych and medical evaluation. Brown was cleared 2058. He and brought to R.C.D.C. for settlement. Witnesses to this incident states that they had been ask by Brown to catch his feet at 0548. S.O. Venable notified @ 0947 hrs. Chief Mathias R. Wonulite

Part I – Executive Director (white)    Part III – Assistant Executive Director (pink)
Part II – Superintendent (canary)    Part IV – File (goldenrod)

460
CCSAO

Exhibit 14

Dre 5/11/10    BK 5/17/10    05/351   4/10/10

Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

★ No Paperwork ★

## CERMAK HEALTH SERVICES DEPARTMENT OF MENTAL HEALTH SERVICES
### ADMISSION / EVALUATION FORM

Mark box ☒ on the left of answers or print in space provided.

Patient Name: **Brown, Archie**  DOC #: 20100410060  DOB: **5-22-63**

Evaluation Site: ☐ RCDC  ☒ Backdoor  ☐ Other: _____  Date: **5-11-10**  Time: **4:50 AM**

---

**Reason for Referral:** Pt is a 46 y/o aa/male referred for a
psych eval via Div. 11. No Paperwork. Pt. reported

**History:**
experiencing a/H. pt c/o pain in Rt Knee.
Pt. reports h/o psychiatric Tx while incarcerated in
Robinson Corr. Facility. Tx for "depression" Rx-unknown

**Current Symptoms:** Pt. reports no other psych Tx. Pt.
"The voices told     denies past suicide attempts. Pt.
me to not talk to   Denies use of street drugs. Pt. reports
you"  **Current Treatments:** h/o ETOH dependence. "for yrs"
Last used prior to incarceration

**Mental Status Exam:**
NONE

Cooperative, alert, Ox4, eye contact-good, hygiene-fair
Speech-Normal r/r, mood-"OK" affect appropriate
Pt. initially reported experiencing a/H - then pt only
C/o pain in Rt Knee.  V/H ⊖ S/H I ⊖ IOA ⊖ FTD ⊖

**Diagnosis:** Axis I: r/o Malingering
Axis II: Deferred (V65.20)     No evidence of delusional
Axis III: Sx A/o                Or paranoid material
                                noted in conversation
**Plan:**                        Judgement & Impulse
pt OK to return to Div. 11       Control-fair, Insight-fair
pt OK for shipment

Tunney, MHSS
**Evaluator Print/Sign Name & Title**
Joanne Tunney, MHSS

Form#: 87410  Rev. May, 2003
BLUE = HIM Record
YELLOW = Mental Health Services
PINK = Evaluator

Charge: Robbery
VOP (parole)

Scheduled for shipment today 5-11-10

PATIENT LABEL

7

Exhibit L

Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

BK 4/10/10

## CERMAK HEALTH SERVICES DEPARTMENT OF MENTAL HEALTH SERVICES
### ADMISSION / EVALUATION FORM

Mark box ☒ on the left of answers or print in space provided.

Patient Name: Brown, Archie     DOC #: 20100410060     DOB: 5-22-63

Evaluation Site: ☐ RCDC  ☒ Backdoor  ☐ Other: _____  Date: 4-13-10  Time: 9 pm

Charge: Robbery     bond: 20,000     court: 4-15-10

Reason for Referral: 46 y.o. African-America male referred for evaluation
Σ reports of discrepancy between Hx given to medical and Hx given to mental health upon

History: admission to CCDC
Reports a hx of tx Σ IDOC Σ Paxil and trazadone. Released from IDOC 2/2010
and stopped taking meds upon his release from IDOC. Denies hx of suicide attempts
Reports ETOH use 6 pack/weekend. Denies drug use. Hx of GSW to back of head Σ the early
90's. Coma X 24 hours. Hx of seizure disorder since that time. Hx of being a

Current Symptoms:
worker @ D-11 x 1 year during his previous incarceration at CCDC.
Received no psychiatric tx at that time.
laughing and joking Σ this writer and D-11 officers. Strongly denies

Current Treatments:     suicidal or homicidal ideation, plan, intent. Has future
Dilantin     oriented goals to be reunited Σ his family upon release from
custody.

Mental Status Exam: Alert, oriented X4. Affect full range Σ congruent mood. Denies perceptual
disturbances, not delusional; no evidence of a thought process disorder
noted. Memory recent/remote seems grossly intact. Denies vegetative
signs of depression. Strongly denies suicidal or homicidal ideation, plan,

Diagnosis:
Axis I: V71.09 No Diagnosis     intent. Appears his stated age, very neatly
Axis II: deferred     groomed, relaxed posture, pleasant + cooperative.
Axis III: seizure disorder     laughing + joking Σ others. Insight,
judgement, impulse control - fair

Plan:
OK for GP
Instructed him on how to
access mental health services Σ the future should he feel the need.
Verbalized understanding.

Evaluator Print/Sign Name / Title     Still Unknown
MHS

✱ Ms. Stein,

Form#: 87410  Rev. May, 2003
BLUE = HIM Record
YELLOW = Mental Health Services
PINK = Evaluator

PATIENT LABEL

5

Exhibit M

Div. 10
BK 4/10/10



Cermak Health Services of Cook County
2800 S. California Avenue
Chicago, IL 60608

## CERMAK HEALTH SERVICES DEPARTMENT OF MENTAL HEALTH SERVICES
### ADMISSION / EVALUATION FORM

Mark box ☒ on the left of answers or print in space provided.

Patient Name: Brown, Archie   DOC #: 2010-0060   DOB: 5/22/63

Evaluation Site: ☐ RCDC ☒ Backdoor ☐ Other:___   Date: 4/10/10   Time: 1:25 pm

Charge: Agg Robbery   Bond: 16,000   Court: unk

**Reason for Referral:** Pt is a 46 year old AA/m referred for evaluation
due to hx of psych tx

**History:** Pt denies any hx of Psych Inpatient Hospitilization, denies
any hx of psych outpatient tx. Reports hx of Risperdal, Depakote
during incarceration at Robinson Correctional facility. Reports
hx of psych tx during incarceration only. Reports Hx of ETOH use
of 1 pint daily. denies any Hx of suicide attempts.

**Current Symptoms:** Denies any current SI/HI at present time. No signs or
symptoms of perceptual disturbance noticed.

**Current Treatments:** Denies any current Psych tx or Psych tx

**Mental Status Exam:** Pt is cooperative, alert, oxox, mood-stx, affect-Full Range
hygine-fair, eye contact-fair, ⊖ SI/HI at present
time, ⊖ A/V/H, C+o, ⊖ FOI, ⊖ paranoid thinking, ⊖ guild
thinking present, present, thought content-organized ⊖ feelings of hopelessness
worthlessness
IC-fair
J-fair
I-fair

**Diagnosis:**   **Axis I:** No Diagnosis v71.09 R/O malinger
**Axis II:** Deferred
**Axis III:** High Blood Pressure/ Seizures

**Plan:** OK to Return to Div 11

_____ MHS          Danielle Thomas MHS
Evaluator Print/Sign Name / Title

Detainee is currently
not in need of Mental Health
Services. Detainee
is aware of
how to access in future
if necessary

Format: 87410  Rev. May, 2003
BLUE = HIM Record
YELLOW = Mental Health Services
PINK = Evaluator

PtN= BROWN, ARCHIE
DOB=05/22/63 Age= 46 FC- 04/10/10
Act# 20100410060 110DCf MR# 51351

6

*Exhibit N*

CERMAK HEALTH SERVICES
2800 South California Avenue
Chicago, Illinois 60608

C.C.D.O.C. NON-EMERGENCY REQUEST FOR PSYCHIATRIC CONSULTATION

Note: Must be attached to movement form if patient is to be transferred.

ORIGIN

Name: BROWN, Archie _____ Date of Birth: 5/22/63

CCDOC #: 2010 0410060 ____ DIVISION/LOCATION: 11-DC

Date: 4/22/10 _____ Time: _____

REASON FOR REFERRAL:

[ ] Inappropriate Behavior            [ ] Refusing Medication:

Dates _____ Times _____

OBSERVATION:

PERSONAL HYGIENE

_____ CLEAN AND NEAT
_____ UNTIDY
_____ UNCLEAN
_____ CARELESS
_____ BODY ODOR

BEHAVIOR

_____ UNABLE TO SIT STILL
_____ SITS ALONE ALL THE TIME
_____ PACES ALL THE TIME
_____ WANDERS IN OTHER'S AREA
_____ TREMBLES, SHAKES
_____ WRINGS HANDS
_____ UNUSUAL GAIT
_____ WHISPERS
_____ TALKS LOUD ALL THE TIME
_____ DOES NOT SPEAK AT ALL
_____ TALKS VERY SLOWLY
_____ TALKS VERY RAPIDLY
_____ SLEEPING PROBLEMS
_____ EATING PROBLEMS
_____ STEALS FROM OTHERS

AFFECT

_____ DEPRESSED
_____ LAUGHS ALL THE TIME
_____ ANGRY
_____ ANXIOUS
_____ STARES INTO SPACE
_____ CHANGES MOOD

COGNITION

_____ DOES NOT KNOW WHO HE IS
_____ DOES NOT KNOW WHERE HE IS
_____ DOES NOT KNOW WHAT HE IS DOING
_____ CONFUSED
_____ UNABLE TO CONCENTRATE
_____ SUICIDAL
_____ ASSAULTIVE
_____ SUSPICIOUS
_____ EXCESSIVE SEXUAL PREOCCUPATION
_____ EXCESSIVE RELIGIOSITY
_____ AUDITORY HALLUCINATIONS
_____ VISUAL HALLUCINATIONS

OTHER: (Please specify) Hx Medication, Depakote, Treza
Risperadal Having S/I at this time

SECURITY: Charge: _____ OFFICER?? Bond: _____
Signature: _____
(Security Officer)

Date Rec'd: _____ By: _____ Disposition: _____

874.03

Original - Psych Dept.          Yellow - Psych Staff          Pink - File

Case: 1:10-cv-03610 Document #: 76 Filed: 05/11/12 Page 44 of 45 PageID #:400
Civil Rights Litigation Clearinghouse                                                        Page 1 of 4
Case: 1:10-cv-03610 Document #: 69-5 Filed: 04/06/12 Page 4 of 5 PageID #:345

(Exhibit 1)

## Case Profile

new search
page permalink

| | | |
|---|---|---|
| Case Name | **CRIPA Investigation, Cook County Jail** | Jail Conditions |
| Docket / Court | NA ( N.D. Ill. ) | JC-IL-0040 |
| State/Territory | Illinois | Save Case |

Case Summary

On February 17, 2007, the United States Department of Justice, Civil Rights Division (DOJ), opened an investigation of the Cook County Jail, under the Civil Rights of Institutionalized Persons Act (CRIPA). In July 2007, the DOJ conducted on-site inspections of the jail, interviewing staff and inmates.

On August 3, 2007, the DOJ notified jail officials of potentially life-threatening deficiencies at the jail, including grossly unsanitary conditions and inadequate emergency key precautions, which the jail immediately began to improve. As they continued to investigate, the DOJ found a series of serious problems with the jail. For example, in one case, an inmate left untreated for a gunshot wound developed sepsis and died. Another inmate's medical problems went untreated, causing him to eventually need an amputation. Just one dentist serves 9,800 inmates, and he only deals in extractions. Indeed, the investigators found that twenty-five percent of the dental procedures result in infection.

On July 11, 2008, the DOJ issued a 98-page letter detailing its finding that the jail was operating to deprive prisoners of their constitutional rights in many respects. Specifically, the letter mentioned inadequacies in the following areas: intake procedures, use of force by staff, management procedures, grievance procedures, placement of video equipment, inmate supervision, assaults on inmates and staff, contraband, vandalism, lighting and visibility of the inmate areas, disciplinary procedures, fire safety procedures, plumbing, ventilation, pest control, food service, and classification procedures. They also found problems with medical and mental health care for inmates, including insufficiencies in the areas of medical staffing, medical intake screening, acute medical care, emergency medical care, administration of medication, infectious disease control, medical record keeping, sick call, poor facilities, dental care, and suicide prevention.

As of the date of this summary, we have no information regarding the actions taken by the jail in response to this findings letter, but we will update this case file as the proceedings unfold.

*Kristen Sagar - 07/22/2008*

compress summary

- click to show/hide ALL -

## Documents

click to show/hide detail

Docket(s)    *No docket sheet currently in the collection*

Exhibit P

Part-A / Control #: _____ X _____

Referred To: _____

☐ Processed as a request.

# COOK COUNTY DEPARTMENT OF CORRECTIONS
## DETAINEE GRIEVANCE

Detainee Last Name: **Brown**          First Name: **Archie**

ID #: 2010 - 0517058   Div.: 10   Living Unit: I-C   Date: 05/23/10

BRIEF SUMMARY OF THE COMPLAINT: I came to the county jail on 04-10-10. I
went through orientation and I reported to the psych doctor that I
take medication my ID # at the time was 20100410060. I told
the psych doctor that I took psych medication and that I needed
my medication because I was hearing voices and seeing stuff, but
the doctor who saw me did not give me my medicine, even after I
told him that I just tried to committ suicide at the police station by
cutting my wrist, the psych doctor still didn't acknowledge my mental issues
and in light of the doctor not acknowledging my well documented illness through
the Illinois Department of Correction, I tried to committ suicide a second time
by trying to hang myself in Div. 11 on 05-11-2010, ID # 20100410060.
The C/O of the deck C.H. Div. 11 and the Lt. that was working for that recommend
and I also was taken to a psych evaluation to Cermak, so see that doctors.

NAME OF STAFF OR DETAINEE(S) HAVING INFORMATION REGARDING THIS COMPLAINT:

ACTION THAT YOU ARE REQUESTING:
I request that the psych doctor who examine me to be fired or at least
reprimand put on his record.

### DETAINEE SIGNATURE: *Archie Brown*

C.R.W.'S SIGNATURE: _____     DATE C.R.W. RECEIVED: 5/24/10

*Please note: Decisions of the "Detainee Disciplinary Hearing Board" cannot be grieved or appealed through the use of a grievance form.*
*All appeals must be made in writing and directly submitted to the Superintendent.*

(WHITE COPY – PROG. SERV.)   (YELLOW COPY – C.R.W.)   (PINK COPY – DETAINEE)   (GOLDENROD COPY – DIVISION/SUPT. OFFICE)